TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 16-801 |
| of | : | July 26, 2017 |
| XAVIER BECERRA Attorney General | : | |
| CATHERINE BIDART Deputy Attorney General | : | |

_____

RUBIN E. CRUSE, Shasta County Counsel, has requested an opinion on the following question:

Does Health and Safety Code section 13146 prohibit fire protection district chiefs from enforcing the State Fire Marshal's building standards and regulations as they relate to R-3 dwellings?

CONCLUSION

Health and Safety Code section 13146 does not prohibit fire protection district chiefs from enforcing the State Fire Marshal's building standards and regulations as they relate to R-3 dwellings.

1

ANALYSIS

A Fire Protection District[1] is a public agency, separate from a city or county, that provides fire protection services within a defined geographical area.[2] Fire protection districts have chiefs, who are vested with all the powers necessary to carry out the fire and safety purposes of their districts,[3] including the power to issue citations for violations of fire protection codes and district ordinances.[4]

Health and Safety Code section 13146 addresses the authority of fire protection district chiefs to enforce the State Fire Marshal's building standards and regulations,[5] both in general and as those regulations relate to "R-3 dwellings"—a term that encompasses residential occupancies including single-family homes, as well as a variety of licensed facilities such as adult care centers, day-care centers, foster family homes, and drug recovery homes.[6]

---

[1] Fire Protection Districts are created pursuant to the Fire Protection District Law of 1987 (Health & Saf. Code, §§ 13800-13970), but our conclusions would apply equally to other districts when exercising authorized fire protection powers. (E.g., Gov. Code, § 61100, subd. (d) (community services district); Pub. Resources Code, §§ 5786.7, subd. (d) (recreation and park district), 13070, subd. (c) (resort improvement district); see also Pub. Util. Code, § 16463.5 (utility district); Wat. Code, §§ 31120, 71680 (water districts).)

[2] Health & Saf. Code, § 13810 ("Any territory, whether incorporated or unincorporated, whether contiguous or noncontiguous, may be included in a fire protection district"). (See 92 Ops.Cal.Atty.Gen. 83, 83 (2009).)

[3] Health & Saf. Code, §§ 13861-13862.

[4] Health & Saf. Code, §§ 13871-13872.

[5] The State Fire Marshal has a duty to "foster, promote, and develop ways and means of protecting life and property against fire and panic," and may adopt building standards and other regulations to further these purposes. (Health & Saf. Code, § 13100.1; see, e.g., Health & Saf. Code, §§ 13108.5, 13143.2, subd. (a), 13144.4, 17921, subd. (b).) The State Fire Marshal's regulations may be found in Title 19 and in Title 24 of Part 9 of the California Code of Regulations.

[6] In its entirety, section 310.5 of Part 2 of the California Building Code provides:

Residential Group R-3. Residential Group R-3 occupancies where the occupants are primarily permanent in nature and not classified as Group R-1, R-2, R-2.1, R-3.1, R-4 or I, including:
Buildings that do not contain more than two dwelling units
Boarding houses (nontransient) with 16 or fewer occupants
Boarding houses (transient) with 10 or fewer occupants
Congregate residences (nontransient) with 16 or fewer occupants

2

In this opinion, we consider whether section 13146 is meant to prohibit fire protection district chiefs from enforcing the State Fire Marshal's building standards and regulations as they relate to R-3 dwellings. For the reasons that follow, we find that the statute's language does not compel such an interpretation, and that the statute's context within the state fire protection statutory scheme as a whole counters such an interpretation.

In construing any statute, our purpose is always to give effect to the legislative intent expressed in the statute. We "look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose."[7] On the other hand, where ambiguity exists, "consideration should be given to the consequences that will flow from a particular interpretation."[8] Also salient to our inquiry here is the principle that statutory language must be read "in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment."[9]

---

Congregate residences (transient) with 10 or fewer occupants
[HCD 1] Efficiency dwelling units
Adult care facilities that provide accommodations for six or fewer clients of any age for less than 24 hours. Licensing categories that may use this classification include Adult Day Programs.
Alcoholism or drug abuse recovery homes (ambulatory only)
Child care facilities that provide accommodations for six or fewer clients of any age for less than 24 hours.
Licensing categories that may use this classification include, but are not limited to:
Day-Care Center for Mildly Ill Children,
Infant Care Center,
School Age Child Day-Care Center.
Family Day-Care Homes that provide accommodations for 14 or fewer children, in the provider's own home for less than 24-hours.
Foster family homes (ambulatory only)
Adult care and child care facilities that are within a single family home are permitted to comply with the California Residential Code.
Lodging houses with five or fewer guest rooms

2016 California Building Code (effective Jan. 1, 2017) (italics and bold omitted).

[7] *Dyna-Med, Inc. v. Fair Employment & Housing Com*. (1987) 43 Cal.3d 1379, 1386-1387.

[8] *Id.* at p. 1387.

[9] *Coalition of Concerned Communities, Inc. v. Los Angeles* (2004) 34 Cal.4th 733, 737; see also *Select Base Materials, Inc. v. Bd. of Equalization* (1959) 51 Cal.2d 640, 645,

We begin with the text of section 13146, which provides, in relevant part:

> The responsibility for enforcement of building standards adopted by the State Fire Marshal and published in the California Building Standards Code relating to fire and panic safety and other regulations of the State Fire Marshal shall be as follows:
>
> (a) The city, county, or city and county with jurisdiction in the area affected by the standard or regulation shall delegate the enforcement of the building standards relating to fire and panic safety and other regulations of the State Fire Marshal as they relate to R-3 dwellings, as described in Section 310.5 of Part 2 of the California Building Standards Code, to either of the following:
>
> (1) The chief of the fire authority of the city, county, or city and county, or his or her authorized representative.
>
> (2) The chief building official of the city, county, or city and county, or his or her authorized representative.
>
> (b) The chief of any city, county, or city and county fire department or of any fire protection district, and their authorized representatives, shall enforce within its jurisdiction the building standards and other regulations of the State Fire Marshal, except those described in subdivision (a) or (d).
>
> (c) The State Fire Marshal shall have authority to enforce the building standards and other regulations of the State Fire Marshal in areas outside of corporate cities and districts providing fire protection services.
>
> (d) The State Fire Marshal shall have authority to enforce the building standards and other regulations of the State Fire Marshal in corporate cities and districts providing fire protection services upon request of the chief fire official or the governing body.[10]

We have been asked to provide our opinion on the proposition that section 13146 *prohibits* fire protection district chiefs from enforcing the State Fire Marshal's building

---

quoting *Stafford v. Los Angeles County Employees' Retirement Bd.* (1954) 42 Cal.2d 795, 799 ("every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect").

[10] Health & Saf. Code, § 13146, subds. (a)-(d).

standards relating to R-3 dwellings. The argument focuses on the language in subdivisions (a) and (b) of the statute. Subdivision (a) assigns authority to enforce standards relating to R-3 dwellings to local fire or building officials—not to fire protection district chiefs—while subdivision (b) of the statute directs fire protection district chiefs to enforce standards and regulations "except those described in subdivision (a) . . . ." The argument, in short, is that the exception expressed in subdivision (b) is mandatory, rather than discretionary, placing a hard limitation on the potential jurisdiction of a fire protection district chief.

We disagree. First, we do not construe subdivision (b)'s exception from the mandate to enforce R-3 dwelling standards and regulations as a mandatory bar to enforcement, but rather as a discretionary outlet to prevent unnecessary duplication of enforcement. Second, the Legislature's overall fire protection statutory scheme supports a contrary interpretation, that is, that fire protection district chiefs are generally authorized to enforce all relevant standards and regulations within their jurisdictions.

Turning to the key provisions of the statutory scheme, we see that section 13146 as a whole parcels out the official responsibilities for enforcing the State Fire Marshal's building standards and regulations as they relate to R-3 dwellings throughout the state. Subdivision (a) provides that city councils and county boards of supervisors are not to enforce the state fire building regulations as an item of general business, but instead they "shall delegate" enforcement to the local fire chief or building chief.[11] Subdivision (a) is silent as to fire protection district chiefs.

Fire protection districts and their chiefs are addressed in subdivision (b), which provides that a fire protection district chief "shall enforce" the State Fire Marshal's building standards and regulations, "except those described in subdivision (a) or (d)." As we have seen, subdivision (a) addresses situations where a local fire department or building department has been delegated to enforce R-3 dwelling regulations; subdivision (d) addresses situations where the State Fire Marshal itself is delegated to enforce its building regulations at the request of a local agency.[12] Thus, fire protection district chiefs *must* enforce State Fire Marshal building regulations and standards as a general matter, but are not required to do so in situations where code enforcement is in the hands of another agency.

---

[11] Health & Saf. Code, § 13146, subd. (a). As used in the Health and Safety Code, the word "shall" is mandatory. (Health & Saf. Code, § 16.)

[12] Specifically, the State Fire Marshal has authority to enforce building standards and regulations "in corporate cities and districts providing fire protection services upon request of the chief fire official or the governing body." (Health & Saf. Code, § 13146, subd. (d).)

5

Our interpretation finds strong support in the broad powers bestowed on fire protection districts under the Fire Protection District Law and related provisions.[13] The law gives fire protection districts "all rights and powers, expressed or implied, necessary to carry out the purposes and intent" of the Fire Protection District Law, including the power to "enforce rules and regulations for the administration, operation, and maintenance" of "fire protection services."[14] Fire protection district chiefs "shall enforce in their respective areas building standards relating to fire and panic safety adopted by the State Fire Marshal and published in the California Building Standards Code and other regulations that have been formally adopted by the State Fire Marshal for the prevention of fire or for the protection of life and property against fire or panic."[15] Similarly, fire protection district chiefs are among those officials who must enforce the State Housing Law,[16] state building standards relating to fire and panic safety, and regulations promulgated pursuant to the State Housing Law relating to fire prevention, protection and suppression, and fire and panic safety, in their respective areas.[17]

In addition, fire protection districts may issue written orders to correct any fire hazard,[18] and annex territory (other than commercial forest lands) that is classified as a state responsibility area and, in such circumstances, "the district shall be responsible for fire suppression and prevention for structures in the area . . . ."[19] A fire protection district may also provide a state agency with fire protection services, may provide a city or county with fire protection, suppression, and prevention services,[20] and may enter into a joint powers agreement or mutual aid agreement with a broad range of public agencies.[21] We

---

[13] Health & Saf. Code, §§ 13800-13970.

[14] Health & Saf. Code, §§ 13861-13862.

[15] Health & Saf. Code, § 13145.

[16] Health & Saf. Code, §§ 17910-17998.3.

[17] Health & Saf. Code, § 17962. A city or county may designate a specified department or officer as responsible for enforcing those provisions, but only if there is no city or county fire department or fire protection district in the area. (Health & Saf. Code, § 17964.)

[18] Health & Saf. Code, § 13870.

[19] Health & Saf. Code, § 13811.

[20] Gov. Code, §§ 55603, 55632; Pub. Contract Code, § 20811.

[21] Health & Saf. Code, §§ 13861, subd. (j) (joint powers), 13863 (mutual aid); see Gov. Code, § 6500 (public agencies); see also, Gov. Code, § 51175, subd. (a) ("Since fires ignore civil boundaries, it is necessary that cities, counties, special districts, state agencies, and federal agencies work together to bring raging fires under control. Preventive measures are therefore needed to ensure the preservation of the public peace, health, or safety").

6

find no differentiation by the Legislature between the scope of enforcement responsibilities granted to fire protection districts and those granted to other local authorities.[22]

Finally, in enacting the Fire Protection District Law, the Legislature specifically advised a liberal construction of the statute to further the compelling public purposes of universal and efficient fire protection services.[23]  Indeed, the legislative findings supporting the law expressly state that "it is the intent of the Legislature in enacting this part to provide a broad statutory authority for local officials. The Legislature encourages local communities and their officials to adapt the powers and procedures in this part to meet their own circumstances and responsibilities."[24]

Had the Legislature intended to bar fire protection district chiefs from enforcing State Fire Marshal's building standards and regulations as they relate to R-3 dwellings, we believe that it would have done so expressly (for example, by stating that such chiefs "shall not," or "are not authorized to," enforce such standards and regulations as they relate to R-3 dwellings).  No such prohibitory language appears.  We believe that the limiting language in Health and Safety Code section 13146, subdivision (b), provides organizational direction rather than a curtailment of the jurisdiction of a fire protection district.

Therefore, we conclude that Health and Safety Code section 13146 does not prohibit fire protection district chiefs from enforcing the State Fire Marshal's building standards and regulations as they relate to R-3 dwellings.

*****

---

[22] See, e.g., Health & Saf. Code, §§ 13108 (authorizing chief of city, county, or fire protection district to enforce regulations for state-owned buildings upon approval as specified), 13145; Pen. Code, § 374.3, subd. (d) (local health department, local fire department, fire protection district, and Department of Forestry and Fire Protection, may determine public health and safety hazard, public nuisance, or fire hazard created by private property owner's dumping waste on his or her property).

[23] Health & Saf. Code, § 13804.

[24] Health & Saf. Code, § 13801.

16-801